UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 22-0062 JGB (SPx) | Date | April 30, 2024 |
| Title | *Canela Cifuentes Catalan v. James S. Hill, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendants' Motion for Summary Judgment (Dkt. No. 106); and (2) VACATING the May 6, 2024 Hearing (IN CHAMBERS)

Before the Court is a motion for summary judgment filed by defendants State of California, acting by and through the California Department of Corrections and Rehabilitation, and Warden J. Hill pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). ("Motion," Dkt. No. 106.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the May 6, 2024 hearing.

## I. BACKGROUND

On January 11, 2022, plaintiff Canela Cifuentes Catalan ("Cifuentes" or "Plaintiff") filed a complaint against defendants James S. Hill ("Hill"), in his individual and official capacity, the State of California acting by and through the California Department of Corrections and Rehabilitation ("CDCR"), a California public entity, Doe Officer 1 individually and in his official capacity, and Does 1 through 100, inclusive. ("Complaint," Dkt. No. 1.)

On January 26, 2024, defendants CDCR and Hill (collectively, "Defendants") filed a motion for summary judgment. ("First MSJ," Dkt. No. 59.) On February 14, 2024, Plaintiff filed an ex parte application to substitute Matthew Sigala ("Sigala") for Doe Officer 1. ("Plaintiff Application," Dkt. No. 63.) On February 15, 2024, Defendants opposed the Application. (Dkt. No. 65.) On February 16, 2024, the Court ordered Plaintiff to respond with

supplemental information no later than February 26, 2024—Plaintiff timely complied. (Dkt. Nos. 66, 80.) On February 26, 2024, Plaintiff opposed the First MSJ. (Dkt. No. 86.) On March 1, 2024, the Court granted the Application, ordered Plaintiff to file an amended complaint, and denied as moot the First MSJ. ("March 1 Order," Dkt. No. 89.) On March 5, 2024, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 95.)

The FAC alleges seven claims: (1) excessive force, sexual assault under 42 U.S.C. § 1983 ("Section 1983") ("Claim One"); (2) unconstitutional policy, practice, or custom under Section 1983 ("Claim Two"); (3) failure to intervene to prevent civil rights violations under Section 1983 ("Claim Three"); (4) battery ("Claim Four"); (5) sexual battery ("Claim Five"); (6) negligence ("Claim Six"); and (7) intentional infliction of emotional distress ("IIED") ("Claim Seven"). (See FAC.)

On March 7, 2024, Defendants filed an ex parte application to vacate the March 1 Order and set a new pre-trial scheduling order. ("Defendants Application," Dkt. No. 99.) On March 8, 2024, Plaintiff opposed the Defendants Application. (Dkt. No. 103.) The same day, the Court granted the Defendants Application and set a new summary judgment and trial schedule. (Dkt. No. 102.)

On March 22, 2024, Defendants filed this Motion. (Motion.) In support, Defendants filed the following:

- Statement of Undisputed Facts ("SUF," Dkt. No. 106-1);
- Declaration of Juliet Lompa ("Lompa Decl.," Dkt. No. 106-2) with attached deposition of Plaintiff ("Plaintiff Depo.," Dkt. No. 106-2, Ex. A.);
- Declaration of Y. Parrish ("Parrish Decl.," Dkt. No. 106-3);
- Declaration of R. Hickethier ("Hickethier Decl.," Dkt. No. 106-4);
- Declaration N. Harris with attached exhibit ("Harris Decl.," Dkt. No. 106-5);
- Declaration of J. Hill ("Hill Decl.," Dkt. No. 106-6);
- Declaration of J. Ferguson ("Ferguson Decl.," Dkt. No. 106-7);
- Declaration of D. O'Connell ("O'Connell Decl.," Dkt. No. 106-8);
- Declaration of O. Ramirez with attached exhibit ("Ramirez Decl.," Dkt. No. 106-9);
- Declaration of D. Cordosi ("Cordosi Decl.," Dkt. No. 106-10);
- Declaration of D. Tristan ("Tristan Decl.," Dkt. No. 106-11); and
- Declaration of A. Holley ("Holley Decl.," Dkt. No. 106-12).

//
//
//
//
//
//
//

On April 1, 2024, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 112.) In support, Plaintiff filed the following:

- Statement of Genuine Disputes of Material Fact ("SUF Opposition," Dkt. No. 112-1);[1]
- Declaration of Canela Cifuentes Catalan ("Cifuentes Decl.," Dkt. Nos. 112-2, 112-11); and
- Declaration of Rodney S. Diggs with attached exhibits ("Diggs Decl.," Dkt. No. 112-3).

On April 8, 2024, Defendants filed a reply. ("Reply," Dkt. No. 113.) In support, Defendants filed the following:

- Evidentiary Objections to the SUF Opposition ("Def. Evidentiary Objections," Dkt. No. 113-1);
- Defendants' reply to the SUF Opposition ("SUF Reply," Dkt. No. 113-2);
- Declaration of Juliet Lompa with attached exhibits ("Lompa Decl. Reply," Dkt. No. 113-3); and
- Declaration of Robert W. Henkels with attached exhibits ("Henkels Decl.," Dkt. No. 113-4).

## II.   FACTS

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e). For summary judgment, courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial. See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court considers the parties' objections only where necessary.[2] All other objections are **OVERRULED AS MOOT**.

---

[1] Plaintiff's Opposition and SUF Opposition references a separate statement of additional material facts ("SSADMF") and cites almost exclusively to the SSADMF, rather than to any evidence properly before the Court. (See, e.g., Opposition at 6-8; 16-20.) This is problematic because Plaintiff fails to include a separate list of her facts and only includes a chart of alleged disputes as to Defendant's SUF. (See Dkt. No. 112-1.) Additionally, in response to the SUF, Plaintiff cites exclusively to the SSADMF in support of many of her alleged disputes—without contradictory evidence, the Court deems these facts undisputed. (See, e.g., SUF Opposition ¶¶ 12, 15, 19, 20, 25-27, 29.)

[2] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "redundant" and unnecessary to consider (continued . . . )

### B. Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted. These material facts are "admitted to exist without controversy" for purposes of this Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Cifuentes is a transgender woman and former inmate at the California Institute for Men ("CIM") in Chino, California. (SUF ¶ 1; FAC ¶ 4.) CDCR is an agency of the State of California. (Id. ¶ 2.) Hill was the Acting Warden at CIM from January 4, 2021 to March 14, 2022.[3] (Id. ¶ 4.) Hill was Warden at CIM from March 14, 2022 until December of 2022. (Id. ¶ 5.) Sigala began employment with CDCR on November 25, 2019. (Id. ¶ 6.) Hill did not participate in CDCR's decision to hire Sigala. (Id. ¶ 7.) CDCR's hiring process for Sigala complied with all requirements and mandates, including a complete pre-employment background investigation of him. (Id. ¶ 8.) Sigala did not have any substantial criminal history before he was hired.[4] (Id. ¶ 9.) At least two licensed psychologists deemed Sigala psychologically suitable for the position of CDCR Correctional Officer after a full evaluation was conducted before he was hired. (Id. ¶ 10.) Hill was not directly involved with Sigala's training or direct supervision.[5] (Id. ¶ 11.)

---

here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

[3] Plaintiff disputes this fact but offers no contradictory evidence. (See SUF Opposition ¶ 4.) Accordingly, the Court deems this fact undisputed. The Court notes that this pattern continues throughout Plaintiff's SUF Opposition. (See SUF Opposition ¶¶ 5-8.)

[4] Cifuentes labels this fact disputed and states "Sigala had extensive misconduct uncovered during his background check." (SUF Opposition ¶ 9.) However, Cifuentes again fails to provide contradictory evidence—neither the "Duckett Decl." nor the exhibit "report from David Cordosi" she cites are part of her Opposition. (See id.; Opposition.) The Court notes that the Motion includes a declaration from David Cordosi, Chief Psychologist of CDCR, but it does not reference Sigala's alleged history of misconduct, nor does it include any reports or exhibits. (See Cordosi Decl.) "Mr. Sigala's legal history does not reveal any history of arrests or citations. There is no evidence or report of driving while intoxicated. Mr. Sigala's interpersonal history does not reflect any history of significant conflict, violence, or other serious problems. Mr. Sigala's educational history appears to be free from any formal disciplinary action . . . His employment history was characterized as generally positive in nature, with most disciplinary action incurred being remote and not egregious in nature." (Cordosi Decl. ¶¶ 6, 12.) Accordingly, the Court deems SUF ¶ 9 undisputed.

[5] Cifuentes disputes this fact and cites Rusty Hickethier's deposition testimony as contradictory evidence ("Hickethier Depo.," Diggs Decl., Ex. 112-9.) (SUF Opposition ¶ 11.) Hickethier does not discuss Hill's relationship with Sigala, or his involvement, if any, with (continued . . . )

As of April 8, 2021, Sigala was current with all of his training—he completed the in-person Prison Rape Elimination Act ("PREA") training on November 3, 2019; he completed the required online PREA training course for the year 2020 on September 12, 2020; he commenced the required online PREA training course for year 2021 on March 21, 2021 and had completed 50% of his 2021 PREA training (the completion deadline was December 31, 2021). (SUF ¶ 12; Harris Decl. ¶ 4-5; see Harris Decl., Ex. A.) Sigala did not have any disciplinary history at CDCR prior to the subject incident. (Id. ¶ 13.) Sigala did not begin working in Facility B at CIM, where Cifuentes was housed, until March 29, 2021. (Id. ¶ 14.)

On April 8, 2021 after 9:15 p.m. in Facility B, Sigala entered Cifuentes's cell alone after final count had been conducted—Sigala sexually assaulted Cifuentes. (Id. ¶¶ 15-16, 29.) Cifuentes notified Officer Munuz of the alleged incident first thing the next morning, on April 9, 2021. (Id. ¶ 17.) Sergeant Holley has been specially trained to investigate sexual crimes and he conducted the first interview of Cifuentes at approximately 9:28 a.m. on April 9, 2021. (Id. ¶ 18.) Investigators collected evidence on April 9, 2021 that included physical evidence and eyewitness accounts. (Id. ¶ 19.) The same day, at 12:21 p.m., Cifuentes identified Sigala as the alleged perpetrator. (Id. ¶ 21; see Holley Decl.) Hill concurred with Lieutenant Tristan ("Tristan")'s recommendation to elevate CDCR's investigation to the Office of Internal Affairs ("OIA"). (Id. ¶ 22.) OIA interviewed Cifuentes, Officer Christensen, three inmates and Sigala in the afternoon and into the evening of April 9, 2021. (Id. ¶ 23.) Tristan kept Cifuentes in the Administrative Segregation Unit ("ASU") on April 9, 2021 because he understood Cifuentes was concerned about her safety in Facility B where she was housed. (Id. ¶ 24.) Hill learned Cifuentes had been placed in ASU on Monday, April 12, 2021 and ordered her to be removed from the unit. (Id. ¶ 25.) Hill was not otherwise involved with, or aware of, housing decisions related to Cifuentes. (Id. ¶ 26.)

On April 12, 2021, OIA Special Agent Ferguson ("Ferguson") picked up the DNA evidence collected from Cifuentes and Sigala and took it to the San Bernardino County Sheriff's Department, Scientific Investigations Division. (Id. ¶ 27.) On April 27, 2021, the Chino Police Department informed CDCR that Sigala committed suicide via self-inflicted gunshot. (Id. ¶ 28.) Officers from the Investigation Services Unit ("ISU") informed Cifuentes of Sigala's suicide. (Id.) OIA completed its investigation on October 13, 2021 and substantiated Cifuentes's claims. (Id. ¶ 29.)

When Cifuentes was removed from ASU, she was housed on CIM's C Yard with another inmate, Joseph Girk—Girk did not have any known prior history of sexual misconduct. (Id. ¶ 30; SUF Reply ¶ 34.) Cifuentes alleged Girk propositioned her and at midnight he removed her sheets, and told her he wanted to kiss her. (Id. ¶ 31.) Cifuentes jumped off of her bunk and warned Girk that if he persisted, she would begin yelling, and if she did, every officer would come

---

Sigala's training or direct supervision—instead, Hickethier generally discusses a warden's duty to supervise his staff. (Hickethier Depo. at 19:13-20:24.) Accordingly, the Court deems SUF ¶ 11 undisputed.

running and turn all of the lights on. (Id.) The next morning, Cifuentes informed correctional officers of the incident and ISU was informed. (Id. ¶ 32.) ISU conducted an investigation, separated Girk from Cifuentes, substantiated Cifuentes' allegation of sexual harassment and disciplined Girk. (Id.) Cifuentes did not believe there was any ongoing dispute with Girk, and Girk never bothered her again. (Id. ¶ 33.)

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### IV.  DISCUSSION

Defendants move for summary judgment of all of Plaintiff's claims against them on the grounds that (1) CDCR is immune under the Eleventh Amendment; (2) Hill is not liable under Section 1983; (3) Hill is entitled to qualified immunity; and (4) Plaintiff cannot prove Hill is liable under state law. (Motion at 8.) The Court agrees with Defendants and, for the reasons outlined below, **GRANTS** the Motion.

//

A. **CDCR**

CDCR argues that it is entitled to summary judgment of all claims against it because the Eleventh Amendment bars federal courts from hearing suits brought against unconsenting states—and the CDCR did not consent to this suit. (Motion at 15.) Plaintiff argues that CDCR waived any Eleventh Amendment entitlements because it defended against this action from the outset. (Opposition at 10.)

The Eleventh Amendment grants sovereign immunity to states against suits filed in federal court, and bars suits seeking relief against a state, an arm of the state, its instrumentalities, or its agencies. Durning v. Citibank, N.A., 950 F.2d 1419, 1422-23 (9th Cir. 1991); Regents of the University of California, et al. v. John Doe, et al., 519 U.S. 425, 429 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978). It is "well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 (9th Cir. 2003). This immunity is broad and unequivocal, unless expressly waived by the state agency or a contrary intent is expressed by Congress. See Belanger v. Madera Unified School Dist., 963 F.2d 248, 250 (9th Cir. 1992); Yakama Indian Nation v. State of Washington Dep't of Revenue, 176 F.3d 1241, 1245 (9th Cir. 1999); Pennhurst v. Halderman, 465 U.S. 89, 99-100 (1984).

As a state agency,[6] CDCR is entitled to Eleventh Amendment immunity. See Brown v. California Department of Corrections, 554 F.3d 747, 752 (9th Cir. 2009); Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Eleventh Amendment immunity applies to Plaintiff's Section 1983 claims, see id., as well her state law claims against CDCR. See Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973-74 (9th Cir. 2004). Plaintiff's contention that CDCR waived immunity by contesting this action is incorrect—because CDCR asserted its immunity throughout this litigation (see Henkels Decl.; Dkt. No. 35), it did not waive its immunity. See Demshki v. Monteith, 255 F.3d 986, 989 (9th Cir. 2021) (A state does not waive Eleventh Amendment immunity merely by defending in federal court. Instead, waiver turns on the state's failure to raise immunity during the litigation); see also Robinson v. State of Nevada, 8. F. App's 799, 800 (9th Cir. 2001). Accordingly, the Court **GRANTS** the Motion as to CDCR and **DISMISSES** Defendant CDCR from this action in its entirety.

B. **Section 1983**

Hill moves for summary judgment in his favor as to Plaintiff's second claim for unconstitutional policy, practice or custom under Section 1983, as well as Plaintiff's third claim for failure to intervene under Section 1983 on the grounds that (1) Hill cannot be held vicariously liable under Section 1983; (2) Hill is not liable for CDCR's response to Plaintiff's assault allegations; and (3) Hill cannot be liable for negligently hiring or training Sigala. (Motion at 16-22.)

---

[6] Plaintiff does not dispute that CDCR is an agent of the State of California. (See SUF Opposition ¶ 2.)

Plaintiff alleges two theories of liability as to Hill: unconstitutional policy, practice or custom; and failure to intervene to prevent civil rights violations. (See FAC ¶¶ 44-68.) Plaintiff alleges that Hill is liable for Sigala's acts (vicarious liability), for purposeful delay of the investigation into her allegations,[7] and for his failure to adequately train and supervise Sigala. (Id. ¶¶ 23, 48, 50.)

### 1. Claim Two: Unconstitutional Policy, Custom or Practice

Municipal liability under Section 1983 can occur "when implementation of [a municipality's] official policies or established customs inflicts [a] constitutional injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 708 (1978). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Under Monell, municipalities are liable when a plaintiff was injured pursuant to an express municipal policy, such as an ordinance, regulation, or policy statement, or a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." See Praprotnik, 485 U.S. at 123, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970)); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481–83 (1986). An "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Polk County v. Dodson, 454 U.S. 312, 326 (1981) (citation omitted).

When plaintiffs seek municipal liability based on an unofficially adopted practice or custom, the practice or custom "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 463 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents." Id. Instead, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id. "While there is no per se rule for the amount of unconstitutional incidents required to establish custom under Monell, 'one or two incidents ordinarily cannot establish a . . . custom, while more incidents may permit the inference of a [custom], taking into account their similarity, their timing, and subsequent actions by the municipality.'" Wettstein v. County of Riverside, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (citation omitted). A

---

[7] Defendants argue that (1) Hill is not liable for minor delays in investigating sexual assault claims, (2) there is no causation between the alleged delay and Sigala's assault, and (3) the evidence indicates that CDCR acted expeditiously in its investigation of Plaintiff's claims—the Court agrees. (Id.) Moreover, Plaintiff fails to oppose this argument in her Opposition. Accordingly, the Court rejects Plaintiff's purposeful delay argument on the grounds that her claim is entirely without merit. (See Motion at 18-19.)

plaintiff "must identify a specific policy or custom and then articulate . . . the basis for concluding [how] the identified policy or custom represents 'official policy'." M.S. v. City of Fontana, 2017 WL 10545379, at *6 (C.D. Cal. April 13, 2017) (citing Monell, 463 U.S. at 691).

Plaintiff makes little attempt to set out evidence in support of these elements. Plaintiff does not explain what Defendants' allegedly unconstitutional policy is, assuming she alleges a policy; she does not point to other specific incidents[8] that would support a finding of an unconstitutional practice or custom, nor does she point to any authority in support of this claim. (See Opposition at 15-18.) The Court finds that there is no triable issue as to Plaintiff's Section 1983 claim for unconstitutional policy, custom or practice as to Hill and accordingly **GRANTS** the Motion as to Hill on Claim Two.

### 2. Claim Three: Failure to intervene

State and local law enforcement officers "have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289-90. "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Id.; see also Chaudhry v. City of Los Angeles, 2010 WL 11459790, at *4 (C.D. Cal. Dec. 21, 2010) ("[A]n officer may be held liable for failing to intercede only if he had a 'realistic opportunity' to do so.") (quoting Cunningham, 229 F.3d at 1289-90).

The question before the Court is whether Hill had an opportunity to intercede in Sigala's actions, such that he would be liable for failure to intervene. The Court finds that there is no genuine dispute of fact that Hill did not have an opportunity to intercede. It is undisputed that Hill did not participate in any alleged sexual assault, and that Sigala was alone when he assaulted Plaintiff. (SUF ¶ 16.) It is undisputed that Sigala was up to date on required trainings (including PREA training) and he did not have any disciplinary history at CDCR prior to the incident. (Id. ¶¶ 12-13; Harris Decl. ¶ 4-5; see Harris Decl., Ex. A.) It is undisputed that Hill was not directly involved with Sigala's training or direct supervision. (Id. ¶ 11.) Plaintiff offers no evidence that Hill had reason to know that Sigala would assault Plaintiff. As to Sigala's assault, Plaintiff does not offer any evidence to suggest that Hill had a "realistic opportunity" to intercede. See Cunningham, 229 F.3d at 1289-90.

Plaintiff also contests Hill's actions after Sigala's assault—Hill "failed to intervene to ensure that Plaintiff was properly accommodated and not retaliated against after filing her

---

[8] While Plaintiff points to "five staff sexual harassment investigations during the five years leading up to the incident," she fails to substantiate this with any evidence, connect it to a policy, practice or custom, or illustrate how, if at all, these investigations were related to Hill and his conduct. (Opposition at 16-17.)

complaint."[9]  (Opposition at 18.)  Plaintiff fails to point to any evidence or authority in support of this argument and instead repeatedly argues that Hill "should have intervened."  (Opposition at 20.)  The Court finds that Hill is not liable for any actions by inmate Girk.  Plaintiff fails to provide any evidence that Hill was aware that Girk posed a substantial risk to her safety, and that he then disregarded that risk.  Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013).  Hill was not involved in CDCR's placement of Plaintiff in C Yard.  (SUF ¶ 26.)  There is no evidence that Girk had a history of sexual assault.  (Id. ¶ 34.)

Plaintiff's theory of vicarious liability fails—"[u]nder Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)).  Plaintiff's theory of supervisor liability also fails because even from the point of view most favorable to Plaintiff, there is no evidence that Hill was personally involved in either the incident with Sigala or Girk.  See Hansen, 885 F.2d, at 646.  Plaintiff has not presented any evidence of a triable issue as to her failure to intervene claim.  Accordingly, the Court **GRANTS** the Motion as to Claim Three.

   3. **Failure to train**

While Plaintiff does not bring a claim for failure to train under Section 1983, she alludes to a failure to train theory into her second claim.  (FAC ¶ 50.)  Plaintiff's allegation stems from Hill's "failure to provide adequate training and supervision to address the risk of trangender inmates being assaulted by male guards."  (Id.)   To state a claim for failure to train or supervise under Monell, Plaintiff must establish "that (1) [she was] deprived of a constitutional right, (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its [deputies] are likely to come into contact; and (3) [her] constitutional injury would have been avoided had the [County] properly trained those [deputies]."  C.B. v. Moreno Valley Unified Sch. Dist., --- F. Supp. 3d ---, 2021 WL 2644101, at *11 (C.D. Cal. June 17, 2021) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)).  A county's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997).  Plaintiff again fails to provide evidence or authority to contradict Defendants' arguments.  (Reply at 9; see Opposition at 15-20.)  Accordingly, the Court **GRANTS** the Motion in so far as Plaintiff brings a failure to train claim.

//
//
//

---

   [9] In her Opposition, Plaintiff repeatedly contends that she was subjected to retaliation—the Court rejects this argument because she does not raise a retaliation claim in the FAC, and even if she did, Plaintiff presents no evidence in support of a retaliation claim.  (Reply at 1.)

### C. Qualified Immunity

Defendants also move for summary judgment on the basis of qualified immunity. (See Motion at 25.) Section 1983 claims brought against individuals acting under color of law must contend with qualified immunity. Qualified immunity protects government officials "from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts generally apply a two-pronged test: whether "(1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). If both prongs are met, the officer will be denied qualified immunity. Id. Plaintiff has not established a constitutional violation, so her claims fail at the first prong. Therefore, the Court need not address the parties' arguments as to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

### D. Claims Four and Five: Battery and Sexual Battery

Hill seeks summary judgment on Plaintiff's battery and sexual battery claims. (Motion at 26.) A battery claim is the state law counterpart to an excessive force claim under Section 1983. See Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1102 n.6 (2004). Sexual battery requires an additional showing of sexually offensive intent and contact. See Cal. Civil Code § 1708.5. For any battery claim, the plaintiff must prove *actual contact*. See Ashcraft v. King, 228 Cal. App. 3d 604, 611, 278 (Ct. App. 1991) ("A harmful contact, intentionally done, is the essence of a battery."); Price v. County of San Diego, 990 F. Supp. 1230, 1244 (S.D. Cal. 1998) ("A battery involves a touching."). A plaintiff must therefore prove a law enforcement officer used unreasonable force in order to assert a claim for battery against the officer. See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273 (1996) ("[A] prima facie battery [claim] is not established unless and until plaintiff proves unreasonable force was used."). The standard for reasonable force is the same under federal and California law. Martinez v. County of L.A., 47 Cal. App. 4th 334, 343 (1996).

Here, Hill was not present during Plaintiff's assault, nor did he have a reason to believe it would occur. (SUF ¶¶ 7-13.) The Court finds that there is no evidence to support Plaintiff's claims for battery and sexual battery. Plaintiff does not adequately oppose Defendants' motion as to battery and admits "Plaintiff's claims against Hill for sexual battery and battery are primarily targeted at Sigala." (Opposition at 24.) As such, the Court **GRANTS** the Motion as to the battery and sexual battery claims against Hill.

//

### E. Claim Six: Negligence

Hill seeks summary judgment on Plaintiff's negligence claim on the grounds that because Hill did not know, or have reason to know that Sigala would assault Plaintiff, he did not breach his duty. (Motion at 27.) To prevail on a negligence claim, a plaintiff must establish: (1) the defendant had a duty to use due care, (2) the defendant breached that duty, and (3) that breach was the proximate or legal cause of the resulting injury. Hayes v. City of San Diego, 57 Cal. 4th 622, 629 (2013). The Court has already found that Hill did not know, or have reason to know that Sigala would commit assault. The Court finds that Plaintiff does not adequately dispute Hill's argument (see Opposition at 21-23)[10] and accordingly **GRANTS** the Motion as to the negligence claim against Hill.

### F. Claim Seven: IIED

Hill seeks summary judgment on Plaintiff's IIED claim. (Motion at 28.) Under California law, an IIED claim must establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009) (citations omitted). Plaintiff concedes her IIED claim against Hill. (Opposition at 29.) Accordingly, the Court **GRANTS** the Motion as to the IIED claim against Hill.

### V.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **DISMISSES** Defendants CDCR and Hill from all claims. The Court **VACATES** the May 6, 2024 hearing.

**IT IS SO ORDERED.**

---

[10] Plaintiff's reliance on Clark, an invasion of privacy case with unrelated facts, and Bradford, in which a negligence claim is not even discussed, is inapposite. (Opposition at 23); see Clark v. Dep't of Corr. & Rehab., 2022 WL 17259540 (Cal. Ct. App. Nov. 29, 2022); Bradford v. State of California, 36 Cal. App. 3d 16 (Cal. Ct. App. Dec. 13, 1973).